WYCKOFF, CHURCH & PARTRIDGE v. LANDSDEN CO.

(Supreme Court, Appellate Term. November 24, 1908.)

WAREHOUSEMEN (§ 34*)—STORAGE OF AUTOMOBILE—INJURY TO MACHINE—NEGLIGENCE—EVIDENCE.

     In an action for the storage of an automobile, evidence *held* not to support a counterclaim based on the charge that plaintiff had negligently damaged the machine by filling the cells of the battery with sulphuric acid, instead of distilled water.

     [Ed. Note.—For other cases, see Warehousemen, Dec. Dig. § 34.*]

Appeal from City Court of New York, Trial Term.

Action by Wyckoff, Church & Partridge against the Landsden Company. From a judgment of the City Court of the city of New York, rendered in favor of defendant, plaintiff appeals. Reversed, and new trial ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEA-BURY, JJ.

Fletcher, McCutcheon & Brown, for appellant.
James Cowden Meyers, for respondent.

MacLEAN, J.   Having and taking the affirmative on its counter-claim for damages for having filled the cells of a storage battery of an automobile with sulphuric acid, instead of distilled water, the defendant's vice president testified that the company kept its automobile in the garage of the plaintiff, which brought this action for storage; that, having used the car all day, he brought it to the plaintiff's garage about July .8, 1907; that on the day following the machine would not move, and he, on inspection, discovered the battery was hot and the surface of the battery filled with gases; that after giving it a very long charge he took the car to Newark, just got to Newark with it, and thereupon the battery was taken from the machine and sent to the Edison Storage Battery Works, whence it was returned in a few days; that it did not .run as it used to before July 8th, and that after using it two or three times a week, sometimes from New York to Newark, in the latter part or towards the middle of September, it was sent back to the Edison Works.   A witness in charge of the testing department of the latter company testified to receiving the battery early in July and to replacing 23 of the 60 or so cells because they did not come up to capacity; that the battery came back on the 15th of September when the whole battery was tested, and the cells cut open and tested by the chemist, who, testifying, said that he found sulphuric acid in combination with potash in every one of the cells.

Assuming all of this testimony to be of facts, it left unaccounted for so many opportunities for interference by others both previously to and during a long drive of 36 miles before coming into the garage. on July 8th, on the trip to Newark, and on the sundry trips for the weeks following, that the issue of which the defendant had the affirmative was too scantily sustained by the evidence.   The cogency whereof, moreover, was weakened by the persistent course of its attorney in asking not for facts but for conclusions of the witnesses, to which questions objections were duly made and exceptions taken.   On the other hand, the evidence for the plaintiff was positive.   The person in charge of the electrical department of the plaintiff testified that he recalled the incident because.it was on Sunday, which was the 7th; that the car came in about 8 o'clock; that he himself filled the battery, noticed the battery was very hot; that he never saw an Edison battery hot before; that he filled this battery with distilled water, describing the process of taking the water from a carboy with a pipe from which he sucked the air until a quantity of the liquid came into his mouth; and that immediately after filling the Landsden machine he filled another from the same carboy, siphoning it the same way for the Lewando Company (dyers and cleaners), whose chauffeur, appearing as a witness, testified that he drove his car all through the month of July and up to the 1st of October.   This positive evidence so far outweighs the loop-holed testimony for the defendant in support of the counterclaim that

the judgment for $206.50 resting upon a verdict for the difference between the plaintiff's claim for storage, admittedly correct, and $500 cost for replacing the batteries, must be reversed, even apart from some errors in the admission of evidence and an inconsiderate expression in the charge of the learned trial justice.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

SEABURY, J. (concurring). This action was brought to recover $293.50 for storage of the defendant's automobile. The defendant admitted the plaintiff's cause of action, and pleaded a counterclaim for $500. The counterclaim was based upon the charge that the plaintiff had through negligence damaged the defendant's automobile by filling the cells of the battery with sulphuric acid, instead of distilled water. The jury returned a verdict for the defendant for $206.50. The defendant proved that on the 8th or 9th day of July he brought the car to the plaintiff's garage to be charged, and that on the following day he found that the machine would not move, and that the battery was hot and filled with gases. The battery was then sent to the Edison Storage Battery Works on July 10th. In August a chemist in the employ of the Edison Company subjected it to a test, and found that sulphuric acid had been inserted in the cells. Some of the cells in the battery were found to be defective when it was examined on July 15th. The evidence was not sufficiently definite to justify the conclusion that the plaintiff's employé had put sulphuric acid in the cells. To justify this inference, it was necessary for the defendant to prove that no one else had put sulphuric acid in the cells between the time when the battery was taken from the plaintiff's garage and the time when the chemist made the test to which he testified. In the absence of satisfactory evidence upon this point, the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

The judgment is reversed, and a new trial ordered, with costs to appellant to abide the event.